UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STEPHEN AGUIAR,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )          File No. 2:17-cv-121
                                         )
RICHARD CARTER, JUSTIN                   )
COUTURE, JARED HATCH,                    )
ANDREW LAUDATE, MICHAEL                  )
MORRIS, JOHN LEWIS, UNKNOWN              )
US DOJ GPS CONTRACTOR,                   )
UNKNOWN GOVERNMENT AGENTS,               )
UNKNOWN GOVERNMENT EMPLOYEES,            )
VERIZON WIRELESS, TRACFONE,              )
UNKNOWN COURT CLERKS,                    )
UNKNOWN LEGAL ASSISTANTS,                )
EUGENIA A.P. COWLES, WENDY               )
FULLER, TIMOTHY DOHERTY,                 )
PAUL J. VAN DE GRAAF,                    )
KATHERINE MYRICK,                        )
                                         )
        Defendants.                      )

**OPINION AND ORDER**

Plaintiff Stephen Aguiar, proceeding *pro se*, is currently
serving a 30-year prison term as a result of his 2011 conviction
for drug distribution and conspiracy.  In the instant civil
action, Aguiar claims that various parties who were involved in
the investigation and prosecution of his criminal case violated
his federal rights.  Defendants Richard Carter, Justin Couture,
Jared Hatch, Andrew Laudate, Eugenia Cowles, Wendy Fuller,
Timothy Doherty, Paul Van de Graaf, and Katherine Myrick have
filed motions to dismiss.  Defendants Verizon Wireless and
TracFone have already been dismissed.

The moving defendants contend, among other things, that

Aguiar's claims are untimely, barred by collateral estoppel, and should be dismissed on the basis of qualified immunity. Defendants also assert protection under the Supreme Court's rulings in *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). For the reasons set forth below, the motions to dismiss are **granted**.

## Factual Background

Aguiar has been convicted of federal drug and/or firearm offenses three times in the District of Vermont: first in 1995, again in 2001, and most recently in 2011. He is currently suing nine current and former named federal employees, in addition to several unknown defendants, claiming constitutional and statutory violations related to his 2011 conviction.

In 2009, Aguiar was indicted by a federal grand jury for conspiracy to distribute cocaine and for distribution of cocaine. In March 2010, his attorney filed a motion to suppress: (1) wire communications intercepted pursuant to Title III warrants issued by the Court on June 3, 2009, June 18, 2009, July 2, 2009, and July 21, 2009, arguing that the government did not comply with the requirements of Title III; (2) evidence discovered after an April 3, 2009 order authorized a pen register and trap and trace devices, arguing that the probable cause affidavit was misleading; (3) evidence of data analysis of Aguiar's phone, arguing a Fourth Amendment violation; and (4) evidence seized by

installing GPS tracking devices on Aguiar's vehicles, again arguing a Fourth Amendment violation.  The Court denied the motion to suppress initially and upon reconsideration.

After an eleven-day trial, the jury convicted Aguiar of one count of conspiracy to distribute heroin and five kilograms or more of cocaine, and six counts of distribution of cocaine. Aguiar appealed his conviction.  On appeal, his arguments included: (1) that the warrantless GPS tracking of his car violated the Fourth Amendment; (2) that this Court erred in denying him a *Franks* hearing regarding a discrepancy in an affidavit supporting the April 3, 2009 pen register application; (3) that the Court erred when it refused to suppress evidence found pursuant to the warrantless search of Aguiar's cell phone; and (4) that the Court erred when it failed to hold an evidentiary hearing based upon a missing page from the Title III intercept memorandum for the July 2, 2009 application.  The Second Circuit affirmed Aguiar's conviction on December 13, 2013, and denied rehearing.  *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 400 (Oct. 20, 2014), *rehearing denied*, 135 S. Ct. 886 (Dec. 15, 2014).

In September 2015, Aguiar filed a motion to vacate pursuant to 28 U.S.C. § 2255, arguing ineffective assistance of counsel. His Section 2255 motion claimed that defense counsel had failed: (1) to argue that this Court lacked jurisdiction to authorize

installation of pen register and trap and trace devices and to
disclose records under Fed. R. Crim. P. 41; (2) to move for
suppression of evidence because the cell phones, wiretap
installations, and intercepted calls were rerouted and acquired
outside the Court's territorial jurisdiction; (3) to move for
suppression of the Title III warrants under *Franks*, or to argue
that the government did not meet the necessity requirement under
18 U.S.C. § 2518; (4) to present sufficient exculpatory evidence
in arguing the motion to suppress evidence obtained pursuant to
the April 3, 2009 pen/trap order; (5) to make an appropriate
motion or objection when the government allegedly failed to
provide Aguiar with a complete copy of the June 3, 2009 and July
9, 2009 Title III applications, affidavits and orders; (6) to
argue outrageous government conduct when the government failed to
include a complete DOJ authorization memo before the Court signed
the July 2, 2009 Title III wiretap warrant; (7) to move the Court
to recuse itself with respect to arguments pertaining to the July
2, 2009 wiretap warrant; and (8) to argue on appeal that Aguiar
was denied a fair trial due to prosecutorial misconduct, insofar
as prosecutors allegedly withheld exculpatory GPS-related
discovery evidence.  Magistrate Judge Conroy issued a Report and
Recommendation recommending that the Section 2255 motion be
denied, and the Court accepted that recommendation.  Aguiar
appealed, and on July 18, 2017, the Second Circuit dismissed the

appeal, finding that Aguiar had not made a substantial showing of the denial of a constitutional right.

The instant case accuses law enforcement officials and prosecutors of violating Aguiar's constitutional rights and various statutory provisions in the course of his prosecution. As defendants argue in their motions to dismiss, many of Aguiar's current argument echo the claims he has raised previously.

## Discussion

### I.  Legal Standard

Defendants contend that the Complaint fails to state a claim upon which relief can be granted, and therefore move to dismiss under Rule 12(b)(6).  "To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when it contains sufficient factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" pleading "facts that are 'merely consistent with' a defendant's liability" does not suffice to establish plausibility.  *Id.* (citing and quoting *Twombly*, 550

5

U.S. at 556-57).

When, as here, the plaintiff is proceeding *pro se*, the Court must construe the complaint liberally "to raise the strongest arguments that [it] suggest[s]." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Current Assistant United States Attorneys

Some of the individual defendants named in this case are no longer employed by the federal government. Current federal employees include Assistant United States Attorneys Eugenia Cowles, Paul Van de Graaf, and Wendy Fuller ("Current AUSA Defendants"). Those three defendants have filed a joint motion to dismiss.

### A. Statute of Limitations

The Current AUSA Defendants first argue that Aguiar's claims are untimely. Aguiar filed his Complaint in this case on July 17, 2017. The statute of limitations for constitutional claims against federal officials is the same as the state statute of limitations for personal injury actions. *See Gonzalez v. Henry*, 802 F.3d 212, 219-20 (2d Cir. 2015). In Vermont, the statute of limitations for a personal injury action is three years. 12 V.S.A. § 512(4).

Aguiar's allegations focus on actions taken during the investigation that occurred prior to his 2011 conviction. If

6

Aguiar did not know of those actions prior to trial, the trial itself revealed the intercepted communications and other law enforcement tactics about which he now complains. Accordingly, absent any sort of tolling, Aguiar's claims are time-barred.

Aguiar relies in part upon a provision in Vermont law, 12 V.S.A. § 551(a), which tolls limitations periods for tort actions if the plaintiff is incarcerated when the cause of action accrues. The statute provides that "[w]hen a person entitled to bring an action specified in this chapter is a minor, insane or imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed." 12 V.S.A. § 551(a). Because the federal limitations period for constitutional claims brought under 42 U.S.C. § 1983 tracks the state rule for personal injury actions, this Court has held that Vermont's tolling provision applies to inmates bringing suit in federal court. *See Bain v. Cotton*, 2009 WL 1660051, at *1 (D. Vt. June 12, 2009); see also *Hardin v. Straub*, 490 U.S. 536, 543 (1989) (affirming application of Michigan tolling statute to Section 1983 action, reasoning that "a State reasonably might conclude that . . . inmates who do not file may not have a fair opportunity to establish the validity of their allegations while they are confined"); *Jones v. Kirchner*, 835 F.3d 74, 82 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1343 (2017) (applying

District of Columbia tolling provision for causes of action that accrue while plaintiffs are imprisoned).

The government does not contest that Aguiar was incarcerated prior to, and at the time of, his conviction.  The government nonetheless argues that tolling should not apply because the Vermont statute is inconsistent with federal policy.  The case law suggests otherwise.  In *Hardin*, the Supreme Court determined that "extending the time in which prisoners may seek recovery for constitutional injuries . . . is consistent with § 1983's remedial purpose."  490 U.S. at 544.  Although this case is brought against federal actors, and is therefore a *Bivens* action rather than a Section 1983 claim, "federal courts have typically incorporated § 1983 law into *Bivens* actions."  *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995); *see Bieneman v. City of Chicago*, 864 F.2d 463, 469 (7th Cir. 1988) ("Actions under § 1983 and those under [*Bivens*] are identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens*).  No wonder the only . . . courts of appeals that have addressed questions concerning limitations under *Bivens* have held that the rules used for § 1983 suits will be applied in full force to *Bivens* cases").  The government submits that the landscape shifted, however, when the Supreme Court issued its decision in *Abbasi*.

In *Abbasi*, the Supreme Court commented on the limited scope of the *Bivens* remedy*.*  137 S. Ct. at 1857.  *Bivens* allowed the

plaintiff, who claimed that he had been subjected to an unlawful
search and arrest, to proceed with a Fourth Amendment damages
claim against federal law enforcement agents despite the fact
that Congress had not provided for such a remedy.  403 U.S. at
389, 395–97.  Since that decision was rendered, the Supreme Court
has recognized a *Bivens* action in only three contexts: (1) an
unreasonable search and seizure in violation of the Fourth
Amendment, *Bivens*, 403 U.S. at 397; (2) employment discrimination
in violation of the Due Process Clause of the Fifth Amendment,
*Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and (3) failure to
treat an inmate's medical condition in violation of the Eighth
Amendment, *Carlson v. Green*, 446 U.S. 14, 19 (1980).

More recently, the Supreme Court made clear that it is
"reluctant to extend *Bivens* liability 'to any new context or new
category of defendants.'"  *Iqbal*, 556 U.S. at 675 (quoting *Corr.
Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  In *Abbasi*, the
Supreme Court noted that "expanding the *Bivens* remedy is now a
disfavored judicial activity."  137 S. Ct. at 1857.  The Supreme
Court further noted that "the analysis in the Court's three
*Bivens* cases might have been different if they were decided
today," and that the *Bivens* remedy should be largely restricted
to the "common and recurrent sphere" of the "search-and-seizure
context in which it arose."  *Id.* at 1856-57.

The statute of limitations question presented here does not

seek to extend the *Bivens* remedy to a new context.  It instead follows the well-established practice of incorporating Section 1983 rules into *Bivens* cases.  One such rule is the incorporation of state law limitations periods, as well as applicable tolling provisions.  *Abassi* does not speak to that practice, and does not control this case.  The Court will therefore adhere to the State of Vermont's tolling provision for constitutional claims brought by incarcerated litigants.

In addition to his constitutional claims, brought under *Bivens*, Aguiar alleges that the Current AUSA Defendants violated the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ("Wiretap Act").  That statute provides its own statute of limitations of two years "after the date upon which the claimant first has reasonable opportunity to discovery the violation."  18 U.S.C. 2520(e).  As noted above, the alleged violations in this case were clear at Aguiar's 2011 trial, and needed to be raised within two years of that time.  This case was initiated in 2017.  Aguiar's Wiretap Act claims (Count 14) are therefore barred as untimely.

### B.    Collateral Estoppel

The Current AUSA Defendants next argue for the application of collateral estoppel, claiming that Aguiar has raised his present allegations previously in the course of his conviction, appeal, and Section 2255 filing.  Aguiar submits that the Current

AUSA Defendants are barred by the doctrine of unclean hands, and that some of his claims are new.

Federal principles of collateral estoppel require that: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Collateral estoppel applies to civil rights lawsuits brought pursuant to 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 101 (1980). The Second Circuit has also held that a party other than the Government may assert collateral estoppel based on a criminal conviction. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986).

The claims against the Current AUSA Defendants are set forth in Counts Five, Six, Eight, Fourteen, and Sixteen. Count Five alleges fabrication of evidence, falsifying evidence, obtaining unlawful evidence, and including such evidence in a pen/trap and wiretap application. One basis for these claims is the allegation that law enforcement listed the wrong phone number in an affidavit. Aguiar asserted this same argument in a motion to suppress and on appeal. The Court denied the motion to suppress because Aguiar had failed to show that the error was reckless or

intentional.  On appeal, the Second Circuit found that there was sufficient evidence to support the affidavit.  *Aguiar*, 737 F.3d at 263.

Count Six alleges that oral communications were intercepted without proper authorization.  This Court previously found that no such conversations were intercepted on the target cell phone prior to the issuance of an order allowing intercepts.  Aguiar argued on appeal that a July 2, 2009 court order was invalid because the United States Attorney's Office failed to include the Justice Department's authorization memo when it applied for an intercept.  The Second Circuit found that the government had provided sufficient proof of a complete application.  *Id.* at 264.

Count Eight alleges that Assistant United States Attorneys Fuller and Van De Graaf, as well as unknown assistants and court clerks, falsified evidence related to authorization of the July 2, 2009 Title III wiretap warrant.  This Court found that the U.S. Attorney's Office received the proper authorization from Department of Justice, and the Second Circuit confirmed that a complete application for authorization was filed with the Court. *Id.*

Count Fourteen alleges violations of the Wiretap Act.  As discussed previously, that claim is untimely.  Moreover, the allegations of unlawful intercepts were addressed by both this Court and the Court of Appeals, as discussed with regard to

12

Aguiar's current Count Six.

In his opposition memorandum, Aguiar argues that several of his current claims were never fully litigated. Those claims include the allegation that the Current AUSA Defendants fabricated surveillance information from a GPS unit removed from his car, that the government improperly accessed his MySpace.com account, and that his calls were rerouted to Boston without authorization. The Current AUSA Defendants note that GPS-related challenges were asserted in a motion to suppress, but concede that Aguiar's current fabrication claim was not previously litigated. They do not address the MySpace.com and rerouting allegations. Accordingly, these allegations are not barred by collateral estoppel.

As to Aguiar's remaining claims, however, the fundamental issues were raised in a prior proceeding, were actually litigated and decided, and Aguiar had a full and fair opportunity, through competent counsel, to argue his claims. Resolution of those issues led to the consideration of certain evidence by a jury, which ultimately voted to convict. Accordingly, the elements of collateral estoppel are satisfied with respect to those claims.

Aguiar's final argument against collateral estoppel is that it is an equitable doctrine, and should not be applied because the Current AUSA Defendants have unclean hands. For support, he again alleges the wrongful interceptions of communications and

the use of unlawfully-accessed evidence at trial.

The Second Circuit has acknowledged that "collateral estoppel is an equitable doctrine—not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004). Because collateral estoppel is an equitable doctrine, "[h]e who comes into equity must come with clean hands." *Id.* (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933)). This principle, known as the "doctrine of unclean hands," established "that the equitable powers of this court can never be exerted [o]n behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity." *PenneCom B.V.*, 372 F.3d at 493 (internal quotation marks, brackets, and citations omitted).

Aguiar has claimed previously that the Current AUSA Defendants acted unlawfully during his investigation and prosecution. With respect to collateral estoppel, the relevant question is whether any of that alleged misconduct prevented Aguiar from raising his arguments fully and fairly. For example, Aguiar cites *Charter Oak Fire Ins. Co. v. Electrolux Home Products*, 882 F. Supp. 2d 396, 398 (N.D.N.Y. 2012), in which the court held that the plaintiff did not have a fair opportunity to

14

litigate previously because of discovery violations.  In this
case, there is no plausible allegation that the Current AUSA
Defendants acted fraudulently or unfairly such that Aguiar was
unable to fully litigate his claims.  The Court will therefore
apply collateral estoppel to the claims raised in prior
proceedings, and those claims are **dismissed**.

      **C.** *Heck v. Humphrey*

    The Current AUSA Defendants next argue that Aguiar's claims
are essentially another collateral attack on his conviction, and
that finding in his favor would necessarily undermine that
conviction.  In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the
Supreme Court held that "when a state prisoner seeks damages in a
§ 1983 suit, the district court must consider whether a judgment
in favor of the plaintiff would necessarily imply the invalidity
of his conviction or sentence; if it would, the complaint must be
dismissed."  It is well established that *Heck*'s bar applies to
*Bivens* claims.  *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)
("Given the similarity between suits under § 1983 and *Bivens*, we
conclude that *Heck* should apply to *Bivens* actions as well.").

    Courts must proceed cautiously when applying *Heck*, as the
Supreme Court has warned against overly-broad applications,
particularly in the event of an allegedly-unreasonable search.

> [A] suit for damages attributable to an allegedly
> unreasonable search may lie even if the challenged
> search produced evidence that was introduced [at

15

trial]. . . . Because of doctrines like independent
source and inevitable discovery, and especially
harmless error, such [an action], even if successful,
would not necessarily imply that the plaintiff's
conviction was unlawful.

*Heck*, 512 U.S. at 487 n.7.

The Current AUSA Defendants contend that "without the
evidence collected as a result of the pen/trap and wiretap
warrants that are the focus of Aguiar's current lawsuit, his
conviction likely would not stand." ECF No. 46 at 13 n.4.
Aguiar responds that the Court's evidentiary rulings were not
critical to his conviction. He cites this Court's decision on
his Section 2255 motion, in which the Court noted the volume of
evidence presented by the government. The Court's order,
however, noted the significance of the recorded intercepts.
*United States v. Aguiar*, No. 2:09-CR-00090-1, No. 2:09-CR-90,
2017 WL 281733 (D. Vt. Jan. 23, 2017). The Magistrate Judge's
Report and Recommendation specifically emphasized the importance
of those intercepts: "the interception of wire communications
between members of the conspiracy, pursuant to Title III
intercept orders, and the contemporaneous tracking of their
location were key components of the government's investigation."
*United States v. Aguiar*, No. 2:09-CR-00090-1, 2016 WL 8668505, at
*2 (D. Vt. Aug. 12, 2016).

As the Magistrate Judge's observation suggests, the
government's case also included significant tracking evidence,

16

collected as a result of the GPS device that Aguiar now claims
was unlawfully placed and the results of which were fabricated.
The Second Circuit noted in Aguiar's appeal of his conviction
that "[a]t trial, the government introduced various evidence
developed with the aid of the GPS data, including maps depicting
Aguiar's travel routes, surveillance photos, and testimony of
officers who made visual observations of Aguiar and his
activities." *United States v. Aguiar*, 737 F.3d 251, 255 (2d Cir.
2013). In upholding the denial of Aguiar's motion to suppress,
the Second Circuit made no mention of harmless error, affirming
instead on the basis of the good faith exception to the
exclusionary rule. *Id.* at 261.

Aguiar also challenges the government's search of his
MySpace.com account. Evidence from that account included
photographs of his vehicles and messages sent from his user
number. *Aguiar*, 2016 WL 8668505, at *13. In his Section 2255
motion, he argued that "[h]ad counsel moved to suppress MySpace
evidence, its direct and derivative evidence would have been
excluded . . . [and] 'but for counsel's unprofessional errors,
there is a reasonable probability that the outcome of the
proceedings would have been different.'" *Aguiar*, No. 2:09-cv-90
(ECF No. 717 at 28-29). Aguiar made similar Section 2255 claims
with respect to the rerouting of his calls to Massachusetts.
*Aguiar*, 2016 WL 8668505, at *17-*18.

In sum, Aguiar is now attacking the legal and investigatory tactics that resulted in significant incriminating evidence. The use of call intercepts and tracking devices helped law enforcement identify members of the conspiracy, some of whom later testified at trial. Much of the testimony from law enforcement officers pertained to the use of wiretap and tracking devices. *Aguiar*, 2016 WL 8668505, at *6-*7. If those same efforts are now held to be unlawful, the Court's ruling will necessarily imply that Aguiar's conviction was invalid. The Court therefore finds that *Heck* applies to Aguiar's claims, including those allegations (fabricated GPS evidence, MySpace.com search, and rerouted calls) that evaded dismissal under the doctrine of collateral estoppel. All such claims are **dismissed** without prejudice.

### D.    Failure to State a Claim

The Current AUSAs next argue that they are protected by qualified immunity. The bulk of their analysis, however, focuses on the conclusory nature of Aguiar's claims and his failure to show personal involvement. As discussed above, *Iqbal* requires a plaintiff to plead facts that show a plausible cause of action. Federal courts have also held that to bring a constitutional claim against a federal official, the complaint "must at least allege that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. Dist. of Columbia*

*Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). Aguiar's allegations fall short of these standards.

The causes of action involving the Current AUSA Defendants allege constitutional violations by means of various forms of misconduct, including fabricating and falsifying evidence and using evidence that was unlawfully obtained. Aguiar does not allege any facts, beyond conclusory statements, to support a finding of personal involvement by AUSAs Cowles, Van De Graaf, or Fuller in such misconduct.

Aguiar's opposition memorandum asks the Court to infer that the Current AUSA Defendants were "intimately involved in all aspects of Mr. Aguiar's criminal investigation," and highlights their involvement in warrant applications. ECF No. 46 at 22. Even if the Court were to infer such conduct, there is no valid constitutional claim. Aguiar's defense counsel raised allegations of improper warrants and other violations on several occasions, and at each stage in the case those arguments were rejected. With respect to claims that may not have been raised previously (*e.g.* accessing the MySpace.com account), there is no basis for an inference of AUSA involvement or wrongdoing.

In addition to claims of specific wrongdoing, Aguiar alleges in Count Sixteen a broad conspiracy to deprive him of his constitutional rights. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in

a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). The claims in this case are both "diffuse" and "expansive," wrapping all defendants into a longstanding conspiracy to land Aguiar in prison. Such broad claims against the Current AUSA Defendants are insufficient to survive their motion to dismiss.

Aguiar's Wiretap Act claims are similarly flawed. Aguiar alleges that defendants intercepted his communications "without proper authorization." He does not allege the Current AUSA Defendants' respective roles in those interceptions.

### E. Sovereign Immunity

Finally, the Current AUSA Defendants argue that any claims against them in their official capacities are barred by sovereign immunity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."). Aguiar contends that sovereign immunity does not apply to the extent that he is seeking prospective injunctive relief, citing *Ex Parte Young*, 209 U.S. 123 (1908).

*Ex Parte Young* does not save his claims, however, because *Bivens* requires that suit "be brought against the federal officials in their *individual capacities*." *Robinson*, 21 F.3d at 510 (emphasis added). Moreover, *Ex Parte Young* created a narrow exception for suits against state officials, while the Current AUSA Defendants are federal officials. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996). Sovereign immunity therefore applies to all official capacity claims brought against the Current AUSA Defendants.

### F.    Leave to Amend

The Second Circuit has held that a *pro se* complaint should be read liberally, and district courts should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." *Id.*

Here, many of Aguiar's claims are insufficiently pled and highly conclusory. Ordinarily, the plaintiff in such a circumstance would be granted leave to file an amended pleading. However, the claims in this case are also barred on substantive grounds, such as collateral estoppel, the *Heck* doctrine, and

statute of limitations provisions.  Those flaws cannot be cured
by re-pleading.  The Court therefore declines to grant leave to
amend with respect to the claims being brought against the
Current AUSA Defendants.  The motion to dismiss brought by the
Current AUSA Defendants is **granted**, and the claims against them
are **dismissed.**

### III. Timothy Doherty

Defendant Timothy Doherty is a former Assistant United
States Attorney for the District of Vermont.  The claims against
Doherty are essentially the same as those brought against the
Current AUSA Defendants.  As a result, Doherty's motion to
dismiss raises the same defenses to Aguiar's claims.  For the
reasons set forth above with regard to the Current AUSA
Defendants, the claims against Doherty are **dismissed**.

### IV.  Katherine Myrick

Defendant Katherine Myrick is the Chief of the Drug
Enforcement Agency's Freedom of Information Act (FOIA) Unit.
After Aguiar was convicted in 2011, he made several FOIA requests
to the DEA for documents related to his criminal case.  Those
documents allegedly included information about GPS evidence and
associated software, the origin of that evidence, and the
government contractor who created the evidence.  Aguiar claims
that the DEA misled him about those documents, and is now suing
Myrick for her role in that alleged deception.  He has also

included Myrick in his conspiracy claim against all defendants, set forth in Count Sixteen of the Complaint. Aguiar has another lawsuit, regarding the same FOIA responses, pending against Myrick and the DEA in the United States District Court for the District of Columbia. *Aguiar v. Drug Enforcement Agency*, No. 14-cv-240-ESH (D.D.C.).

Aguiar claims in Count Eleven that Myrick violated his constitutional rights. His claims, however, focus solely upon FOIA-related actions. Myrick argues that Aguiar cannot bring such claims in a *Bivens* action because his only available remedy is under FOIA. Indeed, FOIA is the type of comprehensive remedial scheme that precludes a *Bivens* remedy. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002).

As discussed previously, the *Bivens* remedy applies to only a narrow set of circumstances. "In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims." *Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) (footnotes omitted). The Supreme Court made clear in *Abbasi* that "expanding the *Bivens* remedy is now a disfavored judicial activity." 137 S. Ct. at 1857. Moreover, a *Bivens* remedy is not available where a statute provides a "comprehensive system to administer public rights."

*Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc).
FOIA represents such a scheme. *Johnson*, 310 F.3d at 777.
Aguiar's constitutional claim in Count Eleven is therefore
barred.

The conspiracy allegations against Myrick must also be
dismissed. To successfully allege a conspiracy, "a plaintiff
'must provide some factual basis supporting a meeting of the
minds, such that defendants entered into an agreement, express or
tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d
105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F.
Supp. 2d 346, 363 (S.D.N.Y. 2000)). "The conspiracy must also be
'motivated by some racial or perhaps otherwise class-based,
invidious discriminatory animus.'" *Dolan v. Connolly*, 794 F.3d
at 296 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d
778, 791 (2d Cir. 2007) (internal quotation marks omitted)). In
this case, Aguiar has failed to allege a plausible claim that
Myrick, as the head of the DEA's FOIA Unit, conspired with the
other defendants, most of whom were involved in the criminal
prosecution that pre-dated the FOIA activity, to deny him his
constitutional rights. Nor is there a plausible, or conceivable,
allegation that Myrick's conduct was based upon class-based
animus. Finally, any claims against Myrick in her official
capacity are barred by sovereign immunity. Myrick's motion to
dismiss is therefore **granted.**

## V.   Andrew Laudate

Defendant Andrew Laudate is a Supervising United States Probation Officer in the District of Massachusetts.  In 2006, he was selected as the U.S. Probation Office representative to the District of Massachusetts' Court Assisted Recovery Effort (CARE) drug court program.  He continues to be involved in the CARE program.

In 2007, while serving the final portion of his federal sentence imposed in the District of Vermont, Aguiar reentered the community through Coolidge House, a Residential Reentry Center (RRC) in Boston.  While at the RRC, Aguiar requested a transfer of jurisdiction from Vermont to Massachusetts in order to participate in the CARE program.  His request was granted, and in January 2007 he began a period of six years of supervised release in the District of Massachusetts.  Aguiar was assigned to Laudate's caseload, as Laudate was the Senior U.S. Probation Officer supervising CARE participants in Boston at that time.

The allegations brought against Laudate are set forth in Counts Twelve and Sixteen.  In Count Twelve, Aguiar alleges that Laudate violated his constitutional rights by assisting the Vermont DEA in its criminal investigation, thereby "abandoning" his role as a federal probation officer.  Aguiar also includes Laudate in Count Sixteen's broad conspiracy claim.

Laudate asserts several of the same defenses as his co-

defendants, including statute of limitations, qualified immunity, failure to state a claim, and sovereign immunity. The fundamental question in Laudate's case is whether he violated any constitutional provisions by providing information to the DEA, and if so, whether his conduct violated clearly established law for purposes of qualified immunity.

The factual allegations against Laudate in the Complaint are sparse, as Aguiar claims that Laudate assisted law enforcement in tracking his movements, including notifying agents about Aguiar's planned trip to Las Vegas. In his opposition memorandum, Aguiar elaborates significantly on those allegations. He first contends that Laudate failed to report Aguiar's arrest for a speeding violation in New Hampshire in 2008, even though the arrest constituted a violation of Aguiar's supervised release. Aguiar claims that Laudate did not report the violation to the Court because any resulting incarceration would have interfered with law enforcement's ongoing investigation of his criminal activities. When Aguiar was arrested for reckless driving in 2009, Laudate again allegedly delayed reporting the violation so that the criminal investigation could proceed.

Aguiar also claims that Laudate helped law enforcement agents monitor his movements using warrantless GPS devices; failed to report that he was traveling out of state; failed to report that he was driving without a valid drivers license; and

allowed agents to search his probation file, which reportedly
contained privileged drug and mental health treatment
information, without a warrant.  Finally, Aguiar contends that
when Laudate conducted home visits in his role as a probation
officer, he was actually searching the home on behalf of law
enforcement.

In response to such claims, Laudate asserts that he is
protected by qualified immunity.  The doctrine of qualified
immunity protects government officials "from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  *Harlow v. Fitzgerald*, 457
U.S. 800, 818 (1982).  The Supreme Court has "repeatedly . . .
stressed the importance of resolving immunity questions at the
earliest possible stage in litigation."  *Hunter v. Bryant*, 502
U.S. 224, 227 (1991) (per curiam).

Aguiar claims that Laudate effectively abandoned his role as
probation officer and instead chose to assist law enforcement.
As the Second Circuit has noted, however, "the objectives and
duties of probation officers and law enforcement personnel are
unavoidably parallel and are frequently intertwined. Indeed, it
is difficult to imagine a situation where a probation officer
conducting a home visit in conjunction with law enforcement
officers . . . would not be pursuing legitimate supervised

27

release objectives." *United States v. Reyes*, 283 F.3d 446, 463-64 (2d Cir. 2002) (citing *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) ("[P]olice officers and probation officers can work together and share information to achieve their objectives."); *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (stating that "[p]arole and police officers may work together . . . provided the parole officer is pursuing parole-related objectives")).  Similarly, the sharing of probation file information with law enforcement was not clearly unconstitutional.  *See Kaminski v. Hayes*, No. 306CV1524CFD, 2009 WL 3193621, at *7 (D. Conn. Sept. 30, 2009) ("Plaintiff has not identified and research has not revealed any [state] statutes prohibiting the disclosure of information from a probation file by a probation officer.").

Given the Second Circuit's observations, the Court cannot conclude that Laudate's alleged actions violated clearly established law.  If, as alleged, he shared information with law enforcement about his home visits, there was no constitutional violation since such visits are plainly in furtherance of legitimate supervised release objectives.  And Aguiar has cited no law for support of his claim that sharing supervised release files with law enforcement violated his Fourth Amendment rights. Other allegations of cooperation with law enforcement are similarly protected.  The claims against Laudate are therefore

**dismissed.**

## VI.  Carter and Couture

Defendants Richard Carter and Justin Couture (the "DEA Defendants") are DEA agents.  Aguiar claims that Carter wrongfully placed GPS units on his vehicle while it was parked on private property, and fabricated GPS evidence.  He alleges that Couture wrongfully searched his MySpace.com user account records and communications without probable cause; violated the Stored Communications Act (SCA) by using an unlawful subpoena to demand MySpace.com content; used fabricated and unlawfully-obtained evidence in pen/trap and wiretap applications to the Court; intercepted Aguiar's communications without proper authorization; and violated the Wiretap Act by accessing communications without proper authorization.  Both DEA Defendants are also included in Count Sixteen's conspiracy claim.

The DEA Defendants first argue that Aguiar's claims are time-barred.  For reasons set forth above, the limitations period for Aguiar's constitutional claims is tolled while he is incarcerated.  The Wiretap Act claims, however, are barred by that statute's two-year limitations period.  18 U.S.C. § 2520(e). Likewise, "[a] civil action under [the SCA] may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation ."  18 U.S.C. § 2707(f).  Aguiar was aware of the

installation of GPS units, the MySpace.com subpoena, and the intercepted communications prior to trial. At the very latest, he knew of the alleged violations at the trial itself. He initiated his Wiretap Act and SCA claims against the DEA Defendants well over two years later. Those claims are untimely.

The DEA Defendants also assert the defense of collateral estoppel. Indeed, the allegations of wrongfully placing GPS units on his vehicle were fully litigated in a suppression motion and on appeal. The MySpace.com issue was litigated in the Section 2255 proceeding. Allegations of using fabricated evidence in pen/trap and wiretap applications were raised and resolved in suppression motions and on appeal.

*Heck* also applies to the claims against the DEA Defendants. Wiretap and tracking techniques utilized by the DEA Defendants played a fundamental role in the criminal investigation. Evidence obtained from wiretaps and GPS devices played a correspondingly significant role in Aguiar's trial and conviction. To declare those investigative practices unlawful, thereby also calling into question the legitimacy of the fruits of those investigations, would necessarily imply that Aguiar's conviction was invalid. The claims against the DEA Defendants are therefore barred by *Heck*.

Qualified immunity also applies to the GPS claim. As the Second Circuit held on direct appeal, "sufficient Supreme Court

precedent existed at the time the GPS device was placed for the officers here to reasonably conclude a warrant was not necessary in these circumstances." *United States v. Aguiar*, 737 F.3d 251, 262 (2d Cir. 2013). With respect to the MySpace.com claim, the DEA Defendants submit that their request for information stored electronically for more than 180 days was fully authorized by the relevant statute. Aguiar counters that, despite the subpoena stating otherwise, the DEA Defendants acquired information that had been stored for fewer than 180 days. To the extent that such information was delivered, that would have been no fault of the DEA Defendants, and in any event Aguiar has failed to allege that such information was used to develop evidence for trial.

With respect to any official capacity claims against the DEA Defendants, those are barred by sovereign immunity. Their motion to dismiss is **granted.**

## VII. Jared Hatch

Defendant Jared Hatch is being sued for his investigatory role as a member of the Vermont Drug Task Force. The claims against Hatch are fundamentally the same as those brought against the DEA Defendants: fabricating, falsifying, and obtaining unlawful evidence, including evidence used in pen/trap and wiretap applications (Count Five); intercepting oral communications without proper authorization (Count Six); violation of the Wiretap Act (Count Fourteen); and conspiracy

(Count Sixteen).  Hatch offers the same defenses as the those posed by the DEA Defendants, and the claims against him are insufficient for the reasons set forth above.  His motion to dismiss is therefore **granted.**

## Conclusion

The motions to dismiss brought on behalf of the Current AUSA Defendants (ECF No. 46), Myrick (ECF No. 63), Laudete (ECF No. 84), Doherty (ECF No. 86), the DEA Defendants (ECF No. 94), and Hatch (ECF No. 99) are hereby **granted.**  The claims against those defendants are dismissed without leave to amend.

The only known defendants remaining in the case are Michael Morris and John Lewis.  Discovery as to all remaining parties shall proceed forthwith.

DATED at Burlington, in the District of Vermont, this 17th day of August, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge